**PADDOCK v. BEELER et al.**

No. 12732.

Court of Civil Appeals of Texas. Dallas.

June 17, 1939.

Storey, Sanders, Sherrill & Armstrong, of Dallas, for appellant.

Randall & Gray and Sam W. French, all of Dallas, for appellees.

LOONEY, Justice.

Appellant, LeRoy Paddock, sued T. T. Beeler and his wife, M. F. Beeler, on the contract hereinafter disclosed. Caroline Paddock and William F. Burrow intervened, but, as the judgment against them was not appealed, their connection with the case will not be noticed further.

Appellant, LeRoy Paddock, and appellees, Dr. T. T. Beeler and his wife, Mrs. M. F. Beeler, prior to March 10, 1933, were residents of the State of Oklahoma. Appellant, a practicing attorney, prior to said date, served appellees professionally, both in the States of Oklahoma and Texas, in regard to legal matters pertaining to the business conducted by appellees, which was the acquisition of oil and mineral leases and ex-

ploiting same for production. The service performed by appellant was giving attention to litigation, preparation of instruments, examination of abstracts of title, perfecting defects in title, and, generally, counsel and advice in regard to the legal phase of appellees' business. On March 10, 1933, the parties entered into a written agreement, a phase of which became the basis of the present suit. This instrument, after reciting previous services rendered by appellant to appellees, stated that it was their desire to agree upon a settlement in regard to all past services and to make an agreement as to future similar services. That part of the agreement that pertains to the present inquiry relates to the settlement for past services rendered by appellant, and reads as follows: "It is agreed that First Parties (appellees) shall, in payment of the work already done by Second Party (appellant) in connection with legal matters for said parties, convey to Second Party by assignment containing usual covenants of warranty, a per cent or proportion of all oil and gas leases owned by them at this time amounting to fifteen per cent (15%) such acreage now so owned by them and to be so conveyed, located in Morris and Titus Counties, Texas amounting to approximately 1282 acres (which excludes any oil lease of five acres or less) upon such assignment the same to become the absolute property of Second Party."

Our discussion will be confined to what we regard to be the decisive issue presented by the pleadings and proof. Appellant alleged that, although requested by him, appellees failed and refused to execute an assignment of the 15% interest in the leases mentioned in the quoted portion of the written agreement, resulting in his being damaged in the sum of $2,990, alleging that he was entitled to recover that amount as the reasonable value of services rendered prior to the execution of the agreement, and, in the alternative, alleged that he was entitled to recover that amount as the reasonable market value of the 15% interest in the leases, as of the date of the agreement.

Appellees denied appellant's allegations and, among other matters, alleged that they were, and at all times had been, willing to execute an assignment of the 15% interest in the leases, but that appellant had never demanded that they do so, because the value of the leases had not been proven by the discovery of oil and because appellant was unable and unwilling to pay the

necessary rentals to keep the leases alive. The above, in our opinion, constituted the decisive issue framed by the pleadings on which the question of liability was properly tried out.

The record discloses that one of the leases lapsed on April 20, 1933, for nonpayment of the annual rental, and that the other lapsed on May 4, 1933, for the same reason.

We have just stated what we regard to be the controlling issue, as framed by the pleadings. The evidence, pro and con, bearing upon that issue, is as follows:

Appellant testified:

"Q. Dr. Beeler testified—and I am not asking you about any work after the contract was executed—let me ask you if Dr. Beeler and Mrs. Beeler ever executed any assignments of the fifteen per cent interest referred to in that contract? A. They did not.

"Q. Let me ask you if either one of them ever told you to prepare assignments for them to execute? A. They did not.

"Q. Let me ask you whether you ever asked Dr. Beeler to give you an assignment? A. Yes, I sure did.

"Q. Tell the jury what his reply was when you asked him to do that? A. His reply that he was going to get a big block of acreage and that he did not want any sales made of anything in there and he didn't want any transfers made or anything of that kind because it would break the market and injure the value of the rest of what he was holding. He just—he would not do it at that time.

"Q. Did he or Mrs. Beeler, or both of them, ever at any time from the time that contract was executed until this date, or the time the suit was filed, ever offer to give you the assignments? A. Never.

"Q. At any time? A. Never.

"Q. Now, subsequent to that time was there any agreement ever made between you and Dr. Beeler and Mrs. Beeler that you would not get that consideration? A. There was never a thing said about that."

Appellees' testimony on this issue is as follows:

"Q. Dr. Beeler, did you ever give to Mr. Paddock an assignment of any oil and gas leases? A. I will have to answer that this way:

"Q. I want you to answer it my way first. Did you ever give him any oil and

gas leases? A. We never actually—he never made them out for me to sign. I was always ready to sign them.

"Q. I will ask you again, did you ever execute and give to him any oil and gas leases? A. I never executed any of my own papers, that is what I carried Jim for, was to do all of my executing. He did all the preparation and I signed them.

"Q. Did you ever tell him to prepare those leases? A. I told him I was ready any time he wanted to prepare them and he said, yes, the rentals were going to come due and he would not have the money to pay the rentals on them and to let that go and we would get this block over here and get a well drilled and then we could sell off enough to pay up all the rentals.

"Q. You were afraid if you executed them to him that he might sell some of them? A. No, sir. If he could have sold them I would have been tickled to death for him to sell them.

"Q. What would it have done to the market if he had sold them? A. It would not have done anything to the market if he had sold them.

"Q. Who was to pay those rentals? A. He was to pay his part and I was to pay mine.

"Q. Did you agree if he did not insist upon your executing the leases that you would pay the rentals? A. No, sir, I did not."

Appellee further testified:

"Q. Did you ever make any offer of these assignments to Mr. Paddock? A. I told him at the time when we talked over about this agreement that he could go ahead and fix up the agreement and I would sign them and any time he wanted to make this assignment or these assignments that I would be glad to sign them.

"Q. Did he give you any reason for not wanting to do that? A. Yes, sir, he did; he said it would not do any good to write them up now because the rentals were coming due or falling due right away and he would not have the money to pay for them, and 'whatever you keep alive, I will have a fifteen per cent interest in the live leases.'"

The court submitted the issue in the following language: "Special Issue No. 5: Do you find from a preponderance of the evidence that plaintiff, Paddock, refused to accept assignments of the 15% of the 1282 acres, as inquired about in Special Issue No. 3? Answer this issue by saying either that he did refuse or he did not refuse. (Answer: He did refuse.)"

The jury having found that appellant refused to accept the assignment, the court rendered judgment in favor of apppellees, from which this appeal was taken.

The main contention of appellant is, that the finding of the jury was an insufficient basis for judgment; that the verdict was incomplete, in that, no issue was submitted and no finding had as to whether or not an offer was made by appellees to execute an assignment of the leases to appellant, and that the issue, whether or not an offer to execute the assignment was refused, submitted without a finding that an offer was actually made, was an insufficient basis for judgment.

In the light of the pleadings and evidence heretofore set out, we do not think the jury could have found as they did, that appellant refused to accept an assignment of the 15% interest in the leases, without first concluding that an offer by appellees to execute the assignment was made. The issue submitted, in our opinion, necessarily comprehended the idea of an offer, which, as found by the jury, was waived by appellant, otherwise, the finding would be incoherent and meaningless.

In the absence of a specially requested issue presenting the view now urged by appellant, we think the issue as submitted was sufficient, and the answer of the jury, that the formal execution of an assignment of the leases was waived, a sufficient basis for the judgment. The finding of the jury to issue No. 3, to the effect that T. T. Beeler did not instruct appellant to prepare for execution an assignment of the leases, was not upon the ultimate issue, but merely evidentiary, and, in our opinion, inconclusive.

The record reveals just another oil field speculation venture, where investors put up means for the acquisition of leases having only a speculative value for a time, and becoming utterly worthless, in the absence of successful development, and an attorney who invested the value of his legal services, each party knowing that success was dependent upon future development, which, in the instant case, did not materialize.

It is significant, we think, that appellant made no effort either to pay, or to see to it that the annual rentals, necessary to keep alive his interest in the leases, were paid, and that he postponed any legal action

on the contract for nearly four years, and so timed the procedure as to arrest, by attachment process, the sum of $3,500 belonging to appellees now in the registry of the court, as per an order of the 44th District Court, entered in another case.

The end of justice, in our opinion, having been attained, the judgment of the court below is affirmed.

Affirmed.